ANTHONY BALSAVAGE, PLAINTIFF, v. THE PENNSYL-
VANIA RAILROAD COMPANY, DEFENDANT.

Decided February 10, 1927.

Negligence—Injury to Passenger of Railway Train—Plaintiff
Brought Suit in Hudson County For Injuries Sustained in
Pennsylvania Where He Lives—Alleged Expulsion From
Train by Drunken Passengers—Found Injured on a Bridge—
Different Stories Told by Him Regarding How He Came to
be There—Verdict of $15,000 Held to be Against Weight of
Evidence.

On rule to show cause, Hudson Circuit.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-
CHARD and MINTURN.

For the rule, *Wall, Haight, Carey & Hartpence.*

*Contra, Hershenstein & Finnerty.*

PER CURIAM.

The suit was brought by the plaintiff, who resides near
Shamokin, Pennsylvania, against the defendant company, to
recover compensation for injuries which he claims to have
received while traveling from Shamokin to Paxinus, where
he resides. Instead of bringing his action in the Pennsyl-

vania courts, he instituted suit in the Supreme Court, Hudson Circuit, in this state, and delayed its institution until the statutory time limitation had nearly expired.

The following were the essential facts presented by the plaintiff's case. The plaintiff entered a smoking car on the train of the defendant company, and was followed, as he and his brother testified, by three men, apparently intoxicated. The brother was left standing upon the platform. One of the three men sat down on the seat in front of the plaintiff, and the other two in the seat immediately behind him; one of the men asked the plaintiff to give him some money, which plaintiff refused to do. After some conversation, this man requested the plaintiff to go outside of the car, and upon the plaintiff's refusal to do so they seized him, pulled him out of the seat and dragged him to the door and then out upon the platform. The plaintiff says that when they seized him the conductor was in the car, collecting fares, and that he called to the conductor for help, but the latter did nothing except remark, "All right, mind your own business, I will be there;" and the conductor proceeded to collect the tickets, but did not interfere in any way. He further testified that the men, after they got him out on the platform, again asked him for money; that he refused, and that they then opened the platform door, and threw him out of the doorway as the car was crossing over the bridge near Paxinus. The conductor denied this story.

The proofs showed that a man named Miller, who lived in the immediate neighborhood of the bridge, heard the plaintiff's cries for help; that he went out and found the plaintiff lying on the tracks by the end of the bridge; that he and some parties from the house of a Mrs. Richey, who lived in the neighborhood, picked up the plaintiff and carried him to the latter's home, from which place he was taken to the hospital. Mrs. Richey says that while the plaintiff was in her house she asked him how he happened to get on the track, and he stated, "I came down to the weigh scales car, and I run and fell off the train. If I had been higher up on the steps, the bridge wouldn't have hit me." Mrs. Richey's

daughter, who was also present, said the plaintiff told them that he came down to the weigh scales on a street car; that he got there too late for the train, but he jumped on it, and was too far down on the step, and was knocked off at the bridge. The son, Boyd Richey, who assisted the plaintiff to the mother's home, testified that the plaintiff said he was hurt by being knocked off at the bridge. A number of witnesses called from the hospital testified that the plaintiff's story of the accident was practically that which the Richey family narrated. The only corroboration of the plaintiff's story was that of a witness named Zarmika. Upon this state of the proofs the plaintiff obtained a verdict for $15,000, and this rule among other grounds presents the contention that the verdict is against the weight of the evidence. It must suffice to state that we think it is.

The rule will be made absolute.